## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-24352-BLOOM/Torres

ROBERT M. GOLDMAN, an individual,
and RONALD M. KLATZ, an individual,

      Plaintiffs,

v.

BRAIN TUNNELGENIX TECHNOLOGIES,
CORP., and MARCIO AURELLO MARTINS ABREU
a/k/a M. MARC ABREU, an individual,

      Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant Brain Tunnelgenix Technologies Corporation ("BTT") and Defendant Dr. Marcio Marc Aurello Martins Abreu's ("Abreu") (together "Defendants") Motion to Dismiss the Complaint, ("Motion to Dismiss"). ECF No. [16]. Plaintiffs Dr. Robert M. Goldman ("Goldman") and Dr. Ronald M. Klatz ("Klatz"), (together "Plaintiffs") filed a Response, ECF No. [23], and Defendants filed a Reply, ECF No. [28]. The Court has reviewed the Motion to Dismiss, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Defendants' Motion to Dismiss is granted.

### I.    BACKGROUND

Plaintiffs brought an action for damages against Defendants relating to a March 2016 purchase of 76,923 shares in BTT by Plaintiffs' company, MDM Consultants, Inc. ("MDM"). Plaintiffs allege that Abreu violated securities laws in the sale of the shares, specifically the Securities Act of 1934 § 10(b), 15 U.S.C. § 78a, *et seq*. as promulgated under 17 C.F.R. § 240.10b-

5 ("Rule 10b-5"). *See* ECF No. [1] at 14. Plaintiffs also claim their $500,000.00 investment was converted by Defendants who were unjustly enriched in the process. *Id*. at 15-16. Plaintiffs allege that Abreu deceived them as they do not typically invest in companies solely as equity investors, they finally agreed to invest in BTT having relied on Abreu's representations that BTT was thriving, and Abreu would find a compensated role for them within BTT. *Id*. ¶¶ 20-23.

The Parties were in a business relationship that spanned six years, during which time Plaintiffs allege they provided "extraordinary services" by introducing Abreu to various technologies, exposure to their medical know-how, allowed Abreu to feature them as advisors, and by securing prominent speaking engagements for Abreu. *Id*. ¶¶ 28-32. However, after repeated requests, Plaintiffs claim they were never paid for their consulting services despite contributing significantly to the value of BTT. The Complaint asserts three counts against both Defendants:

> Count I: Violation of Section 10(B) of the Securities Exchange Act and Rule 10b-5;
> Count II: Conversion of their $500,000.00 investment in BTT; and
> Count III: Unjust enrichment for their $500,000.00 investment in BTT.

ECF No. [1] at 14-16.

Defendants move to dismiss the Complaint on three bases: (1) Plaintiffs lack standing; (2) the federal securities claims are time barred by the statute of repose; and (3) Plaintiffs fail to state valid claims. ECF No. [16] at 1. Defendants argue that if Count I is dismissed, this Court will lack subject matter jurisdiction over Plaintiffs' state law claims for conversion and unjust enrichment. ECF No. [16] at 17. Defendants also assert this action was filed because Plaintiffs' demand for a portion of BTT was rejected. *Id*. at 1. Plaintiffs' counsel sent Defendants' counsel a letter on April 18, 2023, indicating Plaintiffs' contributions as advisors to BTT have a fair market value of between five to ten percent of the company. ECF No. [1-1] at 3. Following an April 2022 investment, it is alleged that BTT reached a valuation of $1.7 billion. ECF No. [1] ¶ 41; ECF No.

[1-1] at 3. Consequently, Plaintiffs' demand was $85,000,000.00 at the low end of their assessed fair market value for their advisory services to BTT. *Id.*

Plaintiffs respond that the misrepresentations leading up to the purchase of the shares is a violation of securities law and takes aim at Defendants' argument that the Rule 10b-5 claim is time barred. The alleged misrepresentations include statements by Abreu that Bill Gates and Google were interested in purchasing BTT, that BTT was soon to launch various products, that there was a planned IPO for BTT within three years, and that Abreu intended to make Plaintiffs paid consultants. ECF No. [23] at 5. Further, Plaintiffs argue that their state law claims are valid and well-pled. Plaintiffs assert that their unjust enrichment claim can be pled in the alternative to a contractual right to the shares because their claim is based on fraud, not an express contract. *Id.* at 6-7. Plaintiffs argue Defendants claimed that they owed $1,923,076.00 for the shares in an August 2023 communication to them, which was an attempt to divest them of the shares, and therefore conversion are well pled. ECF No. [1] ¶ 51; ECF No. [23] at 37. Finally, Plaintiffs argue that because MDM is wholly owned by Plaintiffs who are the only two principals of MDM, they have standing and will amend the complaint to add MDM if necessary. ECF No. [23] at 28.

Defendants reply that Plaintiffs conceded that they lack standing. ECF No. [28] at 2. Defendants also argue that granting leave to amend the Complaint to add MDM as a Plaintiff would be futile based on the statute of repose that would still apply to the sole purchase date of the shares. Regarding the state law claims in Counts II and III, Defendants urge that this Court decline to exercise supplemental jurisdiction should Count I be dismissed.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the

plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." *Sprint Sols., Inc., v. Fils-Amie,* 44 F. Supp. 3d 1224, 1228 (S.D. Fla. Sept. 12, 2014) (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, No. 09-0321, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. Jan. 7, 1986)).

### B.  Futility of Amendment

District courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Federal Rules of Civil Procedure direct that before trial, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" absent a showing of "futility of amendment." 466 F.3d at 1270 (citing *Foman*, 371 U.S. at 182). When an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

### III.    DISCUSSION

#### A.  Plaintiffs Lack Standing

Defendants argue that the Complaint should be dismissed because Plaintiffs are not shareholders in BTT and therefore lack standing to sue under § 10(b) and Rule 10b-5. ECF No. [16] at 6. Plaintiffs contend "only purchasers and sellers of securities can invoke the subject matter of the courts under Section 10(b) of the Securities Exchange Act [and] SEC Rule 10b-5." *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975); *Delta Coal Program v. Libman*, 743 F.2d 852, 855 (11th Cir. 1984)). Furthermore, Defendants reason it is an "objectively demonstrable" fact that Plaintiffs were not purchasers or sellers of the securities at issue. ECF No. [16] at 7.

Plaintiffs respond that when determining whether a party qualifies as a purchaser or seller of a security seeking the protections of § 10(b) and Rule 10b-5, a court must read the statute "flexibly, not technically and restrictively." *Berk v. Maryland Publick Banks, Inc., et al.*, 6 F.Supp.2d 472, 473 (D. Md. June 5, 1998) (quoting *Superintendent of Ins. v. Bankers Life and Cas. Co. et al.*, 404 U.S. 6, 12 (1971)). Plaintiffs reason that after the purchase of the securities, the interest in the stock was transferred to them individually in 2020, a fact Defendants acknowledged at the time. ECF No. [23] n. 7. Plaintiffs argue that, as the only two principals of MDM, they have standing and "were indeed the purchasers of the securities in BTT." *Id*. at 28. Furthermore, Plaintiffs assert Defendants have actually argued there is a failure to join a necessary party under Fed. R. Civ. P. 19(a)(2), not a lack of standing, and they will amend the Complaint to join MDM or add it as a Plaintiff if needed. *Id*.

Defendants reply that Plaintiffs have acknowledged they lack standing because MDM purchased the securities, not Plaintiffs, and the Complaint should be dismissed on this basis alone. ECF No. [28] at 1.

In is evident that Plaintiffs lack standing to bring the federal securities fraud claim because they did not purchase shares in BTT. The shares were purchased by and issued to MDM. Plaintiffs conceded in their Response that MDM purchased the shares. Goldman also conceded in his affidavit that the securities were purchased by MDM in March 2016. ECF No. [24-1] ¶1.1. As such, Plaintiffs' argument that because they were the sole shareholders and principals of MDM, they qualify as purchasers of the securities is without merit.

In *Licht v. Watson*, the Eleventh Circuit upheld a district court's conclusion that a plaintiff who was both an officer of and an owner in a company that purchased stock lacked standing to bring claims under Rule 10b–5 and the Securities Act. 567 F. App'x. 689, 692 (11th Cir. 2014). Even though the plaintiff may have been harmed in his capacity as an officer or shareholder, the Eleventh Circuit determined that "unless he alleges that he was a purchaser or seller of stock in connection with the defendants' fraudulent conduct," the court could not hear the federal securities claims. *Id*. As with Plaintiffs and their position as owners, sole shareholders, and principals of MDM, because MDM is the purchaser of the shares, they lack standing to bring forth this action under federal securities laws. Furthermore, in *Blue Chip Stamps*, the Supreme Court held that an action cannot be maintained under Rule 10b-5 if the party neither bought nor sold the securities at issue. 421 U.S. at 727. Plaintiffs who are barred from bringing claims under Rule 10b include "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment" and extending standing to that respondent was an evident difficulty. *Id*. at 738, 754. As Plaintiffs conceded they did not buy the securities, and they fall within the class of plaintiffs as discussed in *Licht v. Watson* and *Blue Chip Stamps* that cannot bring a claim under federal securities law.

Plaintiffs' reliance on *Berk* and *Superintendent of Ins.* for support that § 10(b) should be read "flexibly, not technically and restrictively" is unavailing as neither case addressed standing. In *Berk*, an out-of-district case, the court declined to hold that a donation of a plaintiff's securities "could never be a 'sale' for purposes of Section 10(b)" in a motion to dismiss. 6 F.Supp.2d at 474 (M.D. N.C. 1998). The *Berk* court reasoned that § 10(b) should be read "flexibly" such that a plaintiff who alleged misrepresentations that caused him to donate more stock than intended could qualify for protection under § 10(b), also noting the lack of precedent on the issue pertaining to donors of securities. *Id*. at 473-74. Nevertheless, it was undisputed there that the plaintiff owned the stock, donated it as owner, and there was no attack on the plaintiff's standing in that case. Consequently, *Berk* does not support the argument that § 10(b) should be read "flexibly" to cure Plaintiffs' lack of standing.

Similarly, in *Superintendent of Ins.*, the Supreme Court determined that a plaintiff company that alleged it was defrauded through interactions with officers of a bank and others can bring a claim under § 10(b) because in reading the statute flexibly, the statute is not "limited to preserving the integrity of the securities markets" and reversed the opinion below. 404 U.S. 6, 12 (citation omitted). The flexibility the Court displayed in *Superintendent of Ins.* permitted protection under § 10(b) to reach transactions beyond organized securities markets but did not indicate that the statute permitted a flexible notion of standing. Thus, while *Superintendent of Ins.* and *Berk* both support the proposition that to determine whether a party qualifies as a "purchaser or seller" under § 10(b) a "court must read the statute 'flexibly, not technically and restrictively'" Plaintiffs have no support for their argument that standing can be viewed flexibly to permit Count I to proceed.

Moreover, Plaintiffs' contention that any lack of standing should be construed as a failure to join a necessary party under Rule 19(a)(2) is also unavailing. Plaintiffs have not provided any

authority to indicate that Fed. R. Civ. P. 19(a)(2) can cure a deficiency in standing, and the

argument is therefore without merit. "[T]he onus is upon the parties to formulate arguments."

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). A "litigant who fails

to press a point by supporting it with pertinent authority, or by showing why it is sound despite a

lack of supporting authority or in the face of contrary authority, forfeits the point." *Melford v.

Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (quotations omitted).

Accordingly, Defendants' Motion with respect to lack of standing is granted.

**B.  Amendment is Futile as the Securities Claims are Barred**

When an amended complaint would still be "properly dismissed" a district court can

determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F.

App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

Defendants contend that an amendment of the Complaint to add or permit joinder of MDM

would be futile. Defendants argue that a change to the named Plaintiffs in this case has no impact

on the date the shares were issued, and therefore no impact on the fact that the claim is barred by

the five-year statute of repose. *Id*. at 3. Violations of the Securities Exchange Act of 1934 § 10(b)

and SEC Rule 10b-5 are governed by 28 U.S.C. § 1658 which in pertinent part provides:

> (b) a private right of action that involves a claim of fraud, deceit, manipulation, or
> contrivance in contravention of a regulatory requirement concerning the securities
> laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15
> U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658(b)

As alleged in the Complaint, MDM purchased the securities on March 16, 2016.[1] ECF No.

[1] ¶ 25. Even if Plaintiffs were to amend their Complaint to add MDM, MDM was still required

---

[1] The Motion to Dismiss indicates the shares were purchased on April 5, 2016. ECF No. [16] at 8. The copy

to file a Complaint by March 16, 2021 to comply with the five-year statute of repose set forth in 28 U.S.C. § 1658(b).

Under § 1658, "the five-year period beginning at the time of the violation is a statute of repose meant to serve as a cutoff for a cause of action." *Rogers v. Nacchio*, 241 F. App'x. 602, 605 (S.D. Fla. July 12, 2007). In *Rogers*, the Eleventh Circuit upheld a district court's determination "that [] federal securities claims were barred by the five-year statute of repose" for a stock purchase that occurred more than five years prior to the date the complaint was filed. *Id*. at 605. *See also Martin v. World Wide Child Care Corp.*, Case No. 17-cv-80188, 2017 WL 9618895, at *2 (S.D. Fla. Dec. 1, 2017) ("Dismissal on statute of limitations grounds is appropriate if it is apparent from the face of [a] complaint that the cause of action is time-barred." (citing *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004)). Accordingly, because the claims brought under Rule 10b-5(b) in this action are time-barred, they would properly be dismissed with prejudice even if leave to amend is granted to add MDM as a plaintiff.

Plaintiffs argues that the statute of repose does not affect their Rule 10b-5(a) and (c) claim in the same manner as a Rule 10b-5(b) claim because "Defendants' violation of the Act is not complete until the unlawful scheme ends." ECF No. [23] at 15.

Whether the statute of repose bars Plaintiffs' Rule 10b-5(a) and (c) claim was squarely addressed in *S.E.C. v. Zandford*, 535 U.S. 813 (2002). In *Zandford*, the Court found a securities broker engaged in a scheme to defraud his clients by converting proceeds from each sale of his clients' securities for his own use; because each sale of his clients' securities furthered the broker's scheme to enrich himself, the Court found they were not independent events but were connected.

---

of the Stock Purchase Agreement indicates the shares were purchased on March 24, 2016. ECF No. [19-1] at 6. However, neither of these conflicting dates impacts the conclusion that § 1658(b) bars this claim, and for purposes of the Order, the date alleged in the Complaint is the operative date.

*Id*. at 820. *Zandford* held "the SEC complaint describes a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide. Those breaches were therefore 'in connection with' securities sales within the meaning of § 10(b)." *Id*. at 825.

Here, there is one sole purchase date alleged for all shares of BTT bought by MDM - March 16, 2016. ECF No. [1] ¶ 25. Plaintiffs allege specific involvement as advisors as follows: on August 4, 2016 Goldman sent an email regarding complimentary technologies and business ideas to benefit BTT; in 2017, Goldman was featured as an advisor for BTT; January 19, 2018, Goldman was featured prominently as an advisor for BTT; Plaintiffs secured speaking engagements for Abreu in 2017 and 2022.[2] ECF No. [1] ¶¶ 29, 30, 32, 34, 36; ECF No. [23] at 16, 18. Plaintiffs also allege a general involvement over six years. Those interactions are not similar to the scheme to defraud in *Zandford* because the conduct was not connected to purchases of securities; the sole purchase of the security occurred in March 2016. *Zandford* clearly held because each sale of the client's securities resulted in an action where the broker took the client's sale proceeds, that type of conduct was connected for purposes of a scheme within the meaning of § 10(b).

Consequently, Plaintiffs' theory that "the five-year repose clock has not even begun" with respect to a Rule 10b-5(a) and (c) claim in this matter fails. Claims under Rule 10b-5(a) and (c) are also governed by the statute of repose within 28 U.S.C. § 1658(b); MDM needed to have filed a Complaint by March 16, 2021 to comply with the five-year statute of repose. For that reason, granting leave to amend the Complaint to add MDM is futile as it cannot maintain a cause of action for violations of the Securities Exchange Act with respect to a Rule 10b-5(b) nor a Rule 10b-5(a) and (c) claim.

---

[2] Plaintiffs also allege they secured a speaking engagement for Abreu in 2015 when their relationship began. As that is before the purchase of the shares, it is not relevant for this inquiry. ECF No. [23] at 11-12.

Case No. 23-cv-24352-BLOOM/Torres

### C. Counts II and II: Lack of Supplemental Jurisdiction for Conversion and Unjust Enrichment Claims

Counts II and III of the Complaint are state law claims that this Court no longer has jurisdiction over as Count I, Violations of the Securities Act, has been dismissed. Pursuant to 28 U.S.C. § 1367:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Id*.

There are no claims remaining in this action that this Court has original jurisdiction over, nor was diversity jurisdiction pled, nor does it exist pursuant to 28 U.S.C. § 1332. "The Eleventh Circuit has a stated policy in favor of dismissing state law claims [] where a court has dismissed all the federal claims in a complaint." *Radzinskaia v. NH Mountain, LP*, Case No. 23-cv-21967, 2023 WL 6376457 (S.D. Fla. Sept. 29, 2023); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial"). Accordingly, Counts II and III remaining in the Complaint are due to be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [16]**, is **GRANTED**. Plaintiffs claim in Count I is dismissed without prejudice due to a lack of standing. Counts II and III are dismissed without prejudice for lack of jurisdiction.

2. The Clerk of Court shall **CLOSE** this case.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

Case No. 23-cv-24352-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 12, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record